Case 1:04-cv-11595-GAO    Document 1    Filed 06/07/2004    Page 1 of 74
SCANNED

MODEL FORM FOR USE IN APPLICATIONS
FOR HABEAS CORPUS UNDER 28 U.S.C.
§ 2254

U.S. DISTRICT COURT
PORTLAND, MAINE
RECEIVED AND FILED

2004 FEB -3 P 1: 24

BY_____
DEPUTY CLERK

CHAD NATHAN BARROWS, SSN 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
B.O.P. I.D. No. 04256-036
Cumberland County Gaol I.D. No. 255502
Cumberland County Sheriff's Dept.,
50 County Way, Portland, ME 04102-2256

IN THE UNITED DISTRICT COURT
FOR THE DISTRICT OF MAINE

CASE NO. _____

CHAD NATHAN BARROWS, PETITIONER

V.

ATTORNEY GENERAL For
the United States
Department of Justice, Respondent
and
ATTORNEY GENERAL TOM RILEY
FOR THE COMMONWEALTH of
MASSACHUSETTS, ADDITIONAL
RESPONDENT

# PETITION

1. Commonwealth of Massachusetts, Dept. of The Trial Court, Salem District Court, 65 Washington St., Salem, MA 01970.

2. November 19, 1999 (11-19-99).

3. Count 1: 8 months County Gaol concurrently.
   Count 2: 2 years County Gaol concurrently.
   Count 3: 2 years County Gaol Concurrently.

4. 3 counts: Restraining Order Violation.

5. Guilty Plea.

6. (b) Judge Only.

7. Yes.

8. No.

9. None.

10. Yes.

11. (a)(1) Commonwealth of Massachusetts, Appeals Court, Docket No. 01-P-1066, Commonwealth vs. Chad N. Bartos(1)(617-725-8106) www.socialaw.com/appslip/appApr03n.html

   (2) Probation Revocation Hearing.

   (3) Fraudulent Misrepresentations by Attorney John J. Courtney For the

Commonwealth of Massachusetts, Committee For Public Counsel Services, Chief Counsel William Leahy et al, 44 Bromfield St., Boston, MA 02108 and Commonwealth of Massachusetts, Trial Court Dept., Administrative Management Chief Justice Robert A. Cornetta, Salem District Court, 65 Congress St., Salem, MA 01970.

(4) No.

(5) Judgements of Salem District Court Affirmed.

(6) April 9, 2003.

(b)(1) Supreme Judicial Court For the Commonwealth of Massachusetts, 1412 Courthouse, Boston, MA 02108 (617-557-1020), Docket No. FAR-13410, CASE NAME: Commonwealth Vs. Chad Nathan Barrows.

(2) Further Appellate Review.

(3) NONE.

3

(4) NO.

(5) DENIED FURTHER APPELLATE
    REVIEW.

(6) June 5, 2003.

(d) YES.

(e) NONE.

12. (a)(b)(d)(e)(F)(i)(j)

A. Ground one: (j) Denial of right of appeal.

(1) On 2-16-99 the Lynn District Court, 580
    Essex St., Lynn, MA 01901, Docket No. 9913RO 0169
    (NOW SEALED RECORD), unlawfully ordered
    no contact with lawful spouse, ex parte.

(2) On 3-11-99 a warrant issued in Salem
    District Court (SDC), alleging the defendant
    called his wife three times and said
    he loves her, in violation of the above
    restraining order on 3 counts from
    one ongoing incident. (Docket No. 9936CR758).

(3) On 3-19-99 the Court Found the Pro Se
    defendant (Stand-By Counsel Appointed) guilty
    on all counts and committed forthwith for 30 days—pli
    3/5/scmedee
    (CB)

(4) On 3-31-99 the Lynn District Court (LDC)
    issued a warrant, alleging the defendant
    made hang up calls from the gaol, in

4

11.(C)(1) Commonwealth of Massachusetts,
Commission Against Discrimination,
One Ashburton Place, Boston, MA 02108,
Docket No. 01140281.

(2) Civil action for executive branch
investigation.

(3) Disability Hate Crimes by
the Committee of Public Counsel Services
assigned to Docket No. 9936(R'258.

(4) No.

(5) "The Commission has concluded that a
Formal investigation of the complaint
would not serve the public interest,"
Beverly Ward, Acting General Counsel.

(6) February 8, 2001.

## Supplement

Violation of the above restraining order. (See Docket No. 9913CR2023.)

(5) On 4-12-99 the defendant, then in custody, was arraigned on Docket No. 9913CR2023 with Attorney Adam Buckley (Former Sheriff's Dept.) temporarily appointed for arraignment as the duty attorney assigned by Essex County Bar Advocates, Inc. Director David Hallinan (Father In-law of Sheriff's Deputy Superintendent, William Center) for this court. The defendant's bail posted by spouse on Docket No. 9913CR2254 was revoked for 60 days and the defendant allegedly assaulted a court officer chained and shackled in a row. (Docket No. 9913CR2273-open)

(6) 60 days thereafter the defendants bail was raised to $101,750.00 cash, for related complaints from mother-in law, and not released until July, 2001.

(7) On 9-17-99 the defendant was served with Notice of Probation Surrender on Docket No. 9936CR758 for Complaint Nos. 9913CR2023 (and-2273) and Attorney Heather Ramsey was appointed for defendant.

(8) On 5-3-99 SDC had issued warrant while defendant was in custody for above.

(9) On 9-17-99 Judge Robert A. Cornetta

5

dismissed Heather Ramsey and ordered
Attorney Brian Gillis to appear as stand-by
counsel without a "waiver of counsel",
a motion from Ramsey for a hearing; with
no change in circumstances.

(10) On March 30, 1999, Stand-By Counsel (Lloyd Walmsley)
wrote to the defendant advising post-
conviction relief for disabled indigents and
citing a case in the Lawyer's Weekly, (Now lost.)

(11) On September 22, 1997 the Committee
For Public Counsel Services (CPCS) dictated
to the Justices of the Commonwealth
of Massachusetts Supreme Judicial Court,
Appeals Courts, Superior Courts, and
District Courts, "In the unusual circumstances
where the judge has decided that counsel
should be assigned after the judge has reviewed
the merits of the matter, CPCS requests that the
judge endorse the motion for assignment of
counsel with language to the effect of : HAVING
Considered THE MATTER ON THE MERITS,
THE MOTION FOR APPOINTMENT OF
COUNSEL IS ALLOWED. REFER TO
CPCS FOR ASSIGNMENT OF COUNSEL
AND NOT FOR SCREENING. Absent

Such language or similar indication that the judge has made a substantive determination that assignment of counsel is warranted, CPCS will assign the matter to its screening panel." (Chief Counsel William Leahy.) Now when Judge's routinely endorse the standard "Motion To Assign Counsel" For CPCS, without the above language, when the Judge is in fact intending counsel be appointed, as a "screening panel" is not their consideration, CPCS takes the opportunity to deprive indigent and disabled prisoners the equal protection of withdrawing their guilty plea.

(11) On 9-2-99 "Judge CPCS", "Assignment Number C2622453-1", assigned Attorney Eleanor Hertzberg, BBO# 558480, P.O. Box 654, Acton, MA 01720, (978)266-3983, For "Post-Trial Criminal Case: Purpose of Assignment: Enhanced Screening" to Docket No. 9936CR258.

(12) On 10-24-00 (My birthday) Eleanor Hertzberg concluded to CPCS, "...I will not take

his case, ... For everybody's sake, I hope this
is the end of this case, although I have
an awful feeling he will someday learn about
the BBO and this will come back at half
the Massachusetts Bar." Memo attached:
"To: Don Bronstein. From: Ellie Hertzberg,
Re: Chad Bartos, The VOP hearing showed
that Mr. Bartos clearly did not understand
what was happening. He clearly suffers
from mental disease. In addition, the
transcript suggests the court and probation
officers also thought there might have been
competency issues. There is a discussion
in the transcript regarding whether or not
Mr. Bartos had seen the court clinician. The
Judge was told he had not." (Judge didn't want to se)

(13) On 8-11-00, "Judge CPCS", "Assignment
    Number C2624179-5," assigned John
    J. Courtney For Direct Appeal on Docket
    No. 9936CR758, instead of Attorney Hertzberg
    who had been actively screening said case
    since 9-2-99.

(14) On 10-26-99 the SDC (Wexler, J.)

8

began a probation violation hearing according to Cornetta's, J. order to proceed Pro Se. Stand-by Counsel had not met with the defendant to prepare and withheld discovery materials prior to hearing. The defendant was only armed with a case law provided by fellow inmates that upheld, "disruption of the proceedings by a defendant is a constructive waiver of self-representation." The defendant proceeded to disrupt and mock the court with the case law. Wexler, J. ordered Gillis to represent me but would not allow a continuance to prepare (Commonwealth V. Faulkner, citations omitted.).

(13) On 10-27-99 the defendant was found in violation of a probation term he never was released for on Docket No. 9936CR258.

(14) On 3-24-00 CPCS Director of Supervision & Evaluation Nancy T. Bennet, Esq., duly notified the defendant that Brian Gillis told her on 2-18-00 he was filing a claim of appeal on my behalf.

(15.) On 11-1-2000 John J. Courtney Filed
Defendant's <u>MOTION TO ENLARGE TIME</u>
<u>FOR FILING NOTICE OF NOTICE</u> (OF)
<u>APPEAL PURSUANT TO M.R.A.P. 14(b)</u>
with the Appeals Court, Docket No.
01-P-1066.

(16.) Courtney was given specific instructions
to: 1) only communicate with the defendant
in writing, and 2) Not to file anything
without defendandt's written approval.

(17) Courtney Filed <u>BRIEF AND APPENDIX</u>
<u>FOR THE DEFENDANT ON APPEAL</u>
<u>FROM THE DISTRICT COURT</u>
<u>DEPARTMENT OF THE TRIAL</u>
<u>COURT</u> on Docket No. 01-P-1066 (Appeals Court)
without the defendant's Knowledge
or true grounds For appeal.
(Com. V Faulkner, Pro Se Order of Court, unlawful
plea, Unlawful arrest, unlawful imprisonment,
unlawful restraing order (NOW SEALED TO PUBLIC),

Unlawful confession, malicious prosecution).

(18.) On 10-27-99 Wexler, J. Found no probable cause for Complaint on Docket No. 9913CR2023. Apparently the Lynn Police Dept. reported there was a phone number on the "Caller ID box" with the same exchange as the Essex County Sheriff's Dept., 20 Manning Rd., Middleton, MA 01949. Complaint No. 9913CR2023 being the motive for offenses on Complaint No. 9913CR2273-OPEN. (The defendant had initiated investigation by Commission)

(19.) On 6-27-00 Chief Justice Joseph Dever endorsed NOTICE OF ASSIGNMENT OF COUNSEL, ASSIGNMENT No. C2879027-4, For Lynn District Court Docket No. 9913RO169 (Restraining order), specifying "Purpose of Assignment: Other; Attorney to be named by CPCS For Appeals Court/SJC/Murder Cases/Rule 30 Motions/SDP."

11

(20) On 8-11-00 CPCS erroneously assigns counsel to "9913CR0169."

(21) On 9-15-00 CPCS (Denise Simonini, Non-counsel) assigned Docket No. 9913RO0169 to Courtney for screening, erroneously ignoring all "boxes" checked by Dever, J. and relying solely on box: "Other", checked under "POST-TRIAL CRIMINAL CASES ONLY/PURPOSE OF ASSIGNMENT," to mean not an appointment of Counsel. However, the above case is not CRIMINAL and Judge Dever checked the appropriate box further down for a civil appeal. (See (11) above.)

(22) Courtney never filed Notice of Appearance on Docket No. 9913RO0169. Had the order been overturned, not vacated, there would have been no basis for Docket No. 9936CR258 and related cases. Transcripts reveal that basis for RESTRAINING ORDER was wife's representations for mother only. The defendant has never been charged criminally with abuse defined by M.G.L.A. c. 209A.

(23) On 12-5-02 Courtney Appeared before the Massachusetts Appeals Court as ordered, and providing the court with my letter of 11-18-02 requesting that Courtney withdraw, The Appeals Court Ordered Courtney to proceed with oral argument, which Courtney did.

(24) On 8-12-03 Courtney Finally provided the defendant with Discovery to Docket No. 9936CR258 per order CPCS July 7, 2003 requested by defendant.

(25) In December 2002 and April 2003 the U.S. District Court, N.Y. Ordered an EMERGENCY MEDICAL TRANSFER For acute Stabilization at Federal Medical Center Devens,

(26) On 10-22-03 the U.S. District Court, ME, ordered a competency evaluation on defendant still pending.

(27) The Commonwealth of Massachusetts, Dept. of Human Services determined

the defendant is fully disabled in 2001.

(23) The defendant is currently prescribed a
MAJOR ANTI-DEPRESSANT and another
ANTI-DEPRESSENT concurrently, provided
by Dr. Corona at the Cumberland
County Gaol where the defendant is
suffering ongoing trauma (See 301F2d594@602).

(24) On 3-12-1999 during arraignment in the
Salem District Court, duty Attorney
Alyssa Rosenthal stated to the Assistant
District Attorney, "He's crazy"; as I
was effecting waiver of counsel.
Alyssa Rosenthal also inspired me
to appeal the restraining order, but
at the time of her advice I was
having suicidal ideations and could
not interact. Motivation would have been the recommend
year commitment.

(25) On 3-19-1999 the probation department
told the court I had not seen the
court clinic.

14

(26) In August 1998 I was diagnosed with depression by Dr. Samuel Henck of Family Medecine, Beverly, MA and advised to seek psychotherapy. In September 1998 I met my wife to be and started an Economics Major at Salem State, living and working alone.

(27) In December 1998 I was diagnosed with an anxiety disorder and prescribed an anxiolytic tranquilizer.

(28) In January 1999 my health insurance was canceled from my previous employer without prior notice.

(29) In Febrary 1999 my wife moved home and had to vacate a restraining order against her mother and was coerced into one against me. (See 371 F2d 594 @ 602).

(30) The defendant is in Fear of the psychological damage inflicted upon indigents by the Commonwealth of Massachusetts and the inevitable threats to public safety. (Kerry is the antichrist.)

B. Ground Two: (a) See above.

C. Ground Three: (b) See above. The

15

defendant was arrested, in violation of M.G.L.A. c. 218 §35A, c. 209A §1, 419 Mass. 269, and 44 Mass. App. Ct. 23 by "Officers of the Court" on Docket No. 9936CR258. The defendant was entitled to an intial "clerk's hearing" and/or Forms.

D. Ground Four: (c) The defendant suffered routine cavity searches by the Essex County Sheriff's Dept. when returned to the Gaol by the Court.

E. Ground Five: (d) See above.

F. Ground Six: (e) The defendant's cell was routinely searched and legal mail was opened and scattered outside of the defendant's presence by "correctional officers" who mocked the defendant's notes and innocence.

G. Ground Seven: (F) The prosecution never requested a competency evaluation for the defendant appearing Pro Se.

H. Ground Eight: (ll) It is fairly evident the Commonwealth of Massachusetts

/6

is controled by lawyer racketeers
unchecked by the Board of Bar Overseers
of the Supreme Judicial Court, 75
Federal St., Boston, MA 02108.

13. Appointed Counsel dictated defense
while the defendant was incapacitated.

14. No.

15.(a) Alyssa Rosenthal, Esq., % Essex County Bar
Advocates, Inc., One Salem Green, Salem, MA
01970 (ECBA).
   (b) Lloyd Walmsley, Esq. (ECBA)
   (c) Heather Ramsey, Esq. (ECBA)
   (d) Brian Gillis, Esq. (ECBA)
   (e) John J. Courtney, Esq., 90 Salem St.,
Malden, MA 02148-5213.
   (F) Eleanor Hertzberg, Esq., P.O. Box 654,
      Acton, MA 01720,
   (g) Courtney (above).

16. No.
17. Yes. (a) Supreme Judicial Court, 1412
Courthouse, Boston, MA 02108. (b) Lifetime
Criminal Offender Record Information with
Docket No. 99/3A00169 and record of serving
a year or more Sentence for Federal
Sentencing guidelines. (c) Yes.

17

Wherefore, petitioner requests that the Court grant petitioner relief to which he may be entitled in this proceeding.

I state under penalty of perjury that the foregoing is true and correct.

Executed On: January 28, 2003.

Chad Nathan Barrows, Kecocu
CHAD NATHAN BARROWS
SSN 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
203 Washington St.
Salem, MA 01920-3607
% Cumberland County
50 County Way
Portland, ME 04102-2256

cc / NOT ALLOWED BY CUMBERLAND COUNTY SHERIFF's DEPT.
(Lt. Panenka)

CERTIFICATE OF AUTHORIZED OFFICER OF INSTITUTION

Unrespondent.

18

Volume:     I
Pages:     54

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                        SALEM DISTRICT COURT
                                 DOCKET NO. CR0758

* * * * * * * * * * * * * * * * * *
                                 *
COMMONWEALTH OF MASSACHUSETTS,   *
    Plaintiff                    *
                                 *
vs.                              *
                                 *
CHAD BARTOS,                     *
    Defendant                    *
                                 *
* * * * * * * * * * * * * * * * * *

---

DATE:          March 19, 1999

LOCATION:      Salem District Court
               65 Washington Street
               Salem, MA  01970

G&M COURT REPORTERS, LTD.
717 Atlantic Avenue, Suite 1D
Boston, Massachusetts
Telephone (617) 338-0030

2

## A P P E A R A N C E S

ASSISTANT DISTRICT ATTORNEY
        On behalf of the Commonwealth of Massachusetts


CHAD BARTOS, Pro Se


ATTORNEY WARMSLEY (phonetic), standby counsel

3

# I N D E X

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|
| CATHERINE BARTOS | | | | |
| (By Mr. Ryan) | 11 | | | |

G&M COURT REPORTERS, LTD.

4

1              **P R O C E E D I N G S**

2

3                      THE CLERK:  Mr. Ryan, are you ready on

4       your violation?

5                      MR. RYAN:  Yes, I am.

6                      THE CLERK:  Okay.  Mr. Bartos?

7                      MR. RYAN:  I have a victim here, Your

8       Honor, and we're going forward today (inaudible).

9                      THE COURT:  Is this this gentleman

10      here?

11                     MR. BARTOS:  (inaudible)

12                     THE CLERK:  Your Honor, I did speak to

13      Mr. Warmsley regarding --

14                     THE COURT:  Standby counsel.

15                     THE CLERK:  -- standby counsel, yes,

16      Your Honor.

17                     THE COURT:  I thought about this over

18      lunch, okay?  I don't want you to go forward

19      without a lawyer at least to give you some advice.

20      If you elect to represent yourself, that's fine,

21      but I want Attorney Warmsley to stand by, because

22      you're facing two and a half years in the house of

23      correction on two of the matters and two and a

24      half years on two of the other matters.  And by

5

1    statute, since one occurred before the other, they

2    would be -- on and after could be requested, which

3    means that you could do more than five years.

4            So I would prefer if you didn't

5    represent yourself, but since you want to, I'm

6    going to have Attorney Warmsley as standby

7    counsel.  So if you have any questions, he can

8    advise you, he can whisper to you and advise you

9    what to say, what not to say and perhaps what

10   questions to ask and what questions not to ask.

11   Okay?

12           MR. BARTOS:  Um-hum.

13           THE COURT:  Okay.

14           MR. WARMSLEY:  As a preliminary matter,

15   Judge, when I talked to Mr. Bartos earlier in the

16   cell area, he was under the impression that the

17   2:00 hearing today was merely a mediation matter

18   at which his wife would be speaking to a mediator.

19   There was no mention at all of any violation of

20   probation hearing --

21           THE COURT:  All right.

22           MR. WARMSLEY:  -- especially a final

23   hearing, and I have a question as to whether Mr.

24   Bartos truly understands that this is a violation

6

1    of probation hearing and a final hearing.

2            THE COURT:  Okay, which is what my

3    concern was also.

4            MR. WARMSLEY:  Yes.

5            THE COURT:  Which is why I didn't want

6    him to represent himself.  And it's a little

7    unclear to me, when he was here last time, why he

8    didn't have counsel.  I know you said you'd

9    represent yourself, but --

10           MR. BARTOS:  I understand.

11           THE COURT:  -- where you're facing

12   sentencing --

13           MR. RYAN:  If you like, Mr. Carlton was

14   here when he was brought in.

15           THE COURT:  Okay.

16           MR. CARLTON:  I was the probation

17   officer that was in charge of that hearing, Your

18   Honor.

19           THE COURT:  Okay.

20           MR. CARLTON:  Again, David Carlton.

21           THE COURT:  Right.

22           MR. CARLTON:  Mr. Bartos did not want

23   to have an attorney.  He strenuously argued not to

24   be appointed an attorney.  He also strenuously

7

1    argued to be allowed to plead guilty that day, the

2    judge did not allow that, gave us an opportunity

3    to contact the witnesses who are here today, and

4    that's why it was continued.

5              THE COURT:  Okay.  And do you

6    understand all this, Mr. Bartos?

7              MR. BARTOS:  I fully understand, and I

8    tried to explain that to Attorney Warmsley down in

9    the cell area, but since he was not appointed, he

10   said that he would try to get me to appoint him

11   first before he heard anything from me.

12             THE COURT:  Okay, and let me ask you

13   this:  Do you want me to appoint Attorney Warmsley

14   and give him an opportunity to speak to you and

15   resolve this matter on another date, or do you

16   want to go forward today?

17             MR. BARTOS:  I want to go forward

18   today.

19             THE COURT:  Okay.

20             THE CLERK:  Okay, Mr. Ryan, are you --

21   if you would raise your right hand, please take an

22   oath, sir?

23             MR. RYAN:  Ma'am?  Miss Bartos?

24             THE CLERK:  Mr. Ryan, if you would

8

1      raise your right hand, please take an oath.

2                      (Witness sworn.)

3                  THE CLERK:  Thank you.  Mr. Bartos,

4      raise your right hand, please take an oath.

5                      (Witness sworn.)

6                  THE CLERK:  Thank you.  And ma'am, if

7      you'd raise your right hand, please?

8                      (Witness sworn.)

9                  MR. RYAN:  Yes, Your Honor.  My first

10     witness, Your Honor, is Cynthia Squires-Bartos.

11                 MS. BARTOS:  Catherine.

12                 MR. RYAN:  Catherine Squires-Bartos.

13                 THE COURT:  Okay.  And this was a

14     violation of probation notice that was given?

15                 MR. RYAN:  Yes, Your Honor.  This was a

16     violation of probation.  Mr. Bartos was placed on

17     probation on . . . he was placed on probation on

18     3/9 of 99, was given a continued without a finding

19     until 3/9/2000, Your Honor.

20                 THE COURT:  Thank you.  I'm just going

21     to show this -- counsel, this is a form that it

22     appears that Mr. Bartos signed regarding his

23     probationary terms?

24                 MR. WARMSLEY:  (inaudible)

GEM COURT REPORTERS, LTD

1          THE COURT:  Okay.

2          MR. RYAN:  Your Honor, as a matter of

3     record, Ms. Catherine -- Miss Bartos --

4          MR. WARMSLEY:  Judge, as a preliminary

5     matter, Mr. Bartos wants to inquire as to whether

6     his wife is aware that she has a right not to

7     testify against him, citing the marital privilege.

8          THE COURT:  Okay.  Have you been

9     advised --

10         MS. BARTOS:  Yes, I have.

11         THE COURT:  -- Miss Bartos, regarding

12    your marital privilege, which means that under

13    Massachusetts statute, you do not need or are in

14    any way obligated and can refuse to testify

15    against your husband?

16         MS. BARTOS:  Um-hum.

17         THE COURT:  You've been advised of

18    that?

19         MS. BARTOS:  I know.

20         THE COURT:  Okay.  And you wish to

21    testify and waive your marital privilege?

22         MS. BARTOS:  No, I'm not going to --

23    can I just nod?

24         THE COURT:  Yes?

10

1          MS. BARTOS:  Yeah.

2          THE COURT:  Okay.  So you can waive

3     your -- you don't wish to waive your marital

4     privilege, you wish to invoke it, which means you

5     wish not to testify?

6          MS. BARTOS:  I'm not sure I'm

7     understanding what you mean.

8          THE COURT:  Okay.

9          MS. BARTOS:  Does that -- well --

10          THE COURT:  Because you're married to

11     him, you have a right not to testify --

12          MS. BARTOS:  Right, well, I already --

13     does that -- you mean right now?  I mean, all the

14     other times that I --

15          THE COURT:  I mean right now.

16          MS. BARTOS:  All right, yeah, well, I

17     know that.

18          THE COURT:  Okay.  And do you wish to

19     testify or do you wish not to testify?

20          MS. BARTOS:  No, I will, I will.

21          THE COURT:  You want to testify?

22          MS. BARTOS:  Um-hum.

23          THE COURT:  So you wish to waive your

24     marital privilege and testify against your

11

1    husband?

2                    MS. BARTOS:  (No verbal response)

3                    THE COURT:  Yes?

4                    MS. BARTOS:  Yes.

5                    THE COURT:  Okay.

6                    MR. RYAN:  Yes, Your Honor.

7

8                    **DIRECT EXAMINATION**

9

10        BY MR. RYAN:

11

12   Q    Miss Bartos, did you have a 209 -- a restraining

13        order taken out against Mr. Bartos?

14   A    Yes.

15   Q    And do you remember what date you had that taken

16        out?

17   A    February 16th.

18   Q    Of this --

19   A    This year.

20                    MR. RYAN:  Okay.  Your Honor, as

21        evidence, February 16th --

22                    THE COURT:  Okay.

23                    MR. RYAN:  -- 209A taken out by --

24        excuse me --

12

1           THE COURT:  Just show it to counsel,

2    please.

3           MR. WARMSLEY:  Judge, Mr. Bartos has an

4    objection with respect to the admissibility of the

5    restraining order.

6           THE COURT:  Okay.  And what is that

7    objection?

8           MR. BARTOS:  On the record, it will

9    show when, during the hearing of the restraining

10   order in front of Judge Dever, that my wife said

11   that she is not in any fear of me and that she was

12   getting the restraining order for my mother-in-

13   law.  I've never committed any act of violence

14   against her or hit her.

15          THE COURT:  Okay.

16          MR. BARTOS:  I wasn't informed until

17   last Friday by Attorney Lisa Rosenthal, the fifth

18   lawyer that I've had appointed, that I could

19   appeal the restraining order and have the

20   restraining order rescinded.

21          THE COURT:  Okay, let me ask you a

22   question.  You were there during the hearing?

23          MR. BARTOS:  Yes, I was.

24          THE COURT:  Okay.  And you received a

1          notice that the restraining order was issued?

2                  MR. BARTOS:  Yes.

3                  THE COURT:  Okay.  And you were given a

4          copy of that order?

5                  MR. BARTOS:  Yes, I was.

6                  THE COURT:  Okay.  That's all they

7          need.  Sorry.  Go ahead.

8                  MR. RYAN:  Thank you, Your Honor.

9    Q   After that restraining order, Miss Bartos, did

10      your husband contact you?

11   A   Yes.

12   Q   And which way?

13   A   Phone.

14   Q   And during this time, how many times did he

15      contact you?

16   A   Well, some nights he wouldn't call at all, just --

17      I don't know.  In one night?  I don't know,

18      about --

19   Q   Well, during the period of, let's say --

20   A   From then to now?

21   Q   -- from 2/16 until 3/9.

22   A   I don't know, probably about fifty times.  I don't

23      know.

24   Q   Did he ever go to your work?

14

1    A    Once.

2    Q    Okay.  And what happened at that time?

3    A    He just knocked.

4    Q    And what was your response?

5    A    I called the police, I didn't --

6    Q    And what happened?

7    A    They took him to jail.

8              MR. RYAN:  I have no further questions.

9              THE COURT:  Okay.  Do you have any

10   questions?

11             MR. BARTOS:  No.

12             THE COURT:  No?  Okay.  Thank you.  You

13   can step down.  Do you wish to be heard?

14             MR. BARTOS:  Yes, Your Honor.  As I've

15   indicated to the court that the -- I believe that

16   the restraining order isn't -- wasn't legally

17   issued, okay, because there was no grounds for it,

18   and I wasn't informed of my right to appeal it by

19   Attorney O'Shea, who I asked about it and he said

20   there was nothing I could do until March 12th,

21   Lisa Rosenthal told me I could appeal it and have

22   it rescinded by the appellate court and have these

23   charges dropped.  My only reason for violating the

24   restraining order is not knowing what else to do.

15

1              THE COURT:  I don't understand that

2    part.  What do you mean, you didn't know what else

3    to do?  The order said no contact.  You were in

4    court.  Judge Dever told you no contact, correct?

5              MR. BARTOS:  Right.

6              THE COURT:  And you got a copy of this,

7    right?

8              MR. BARTOS:  That's correct.

9              THE COURT:  And you can read the second

10   paragraph which says no contact.

11             MR. BARTOS:  Right.

12             THE COURT:  Either in person, by phone,

13   in writing or otherwise.  Correct?

14             MR. BARTOS:  Right, that's correct.

15             THE COURT:  Okay.  And --

16             MR. BARTOS:  I didn't know what else to

17   do as to rectify.

18             THE COURT:  Oh, I understand that, but

19   why did you continue to contact her, fifty phone

20   calls and going to her work?  That's at least

21   fifty-one violations.

22             MR. BARTOS:  Right.

23             THE COURT:  Didn't you understand that

24   the order was the order until you appeal it or

16

1    change it or some judge changes it?

2        MR. BARTOS:  No, I didn't, because I

3    didn't know I could appeal it.

4        THE COURT:  Okay.  Aside from that fact

5    whether you appeal or not, you knew it's a court

6    order.

7        MR. BARTOS:  Right.

8        THE COURT:  And you were advised that a

9    violation of that is a criminal act.

10        MR. BARTOS:  Right, no, I was aware

11    of -- I'm aware of that.

12        THE COURT:  Okay.  So you violated this

13    restraining order approximately fifty-one times,

14    and you didn't see any problem with that?

15        MR. BARTOS:  I saw a problem with it --

16        THE COURT:  Okay.

17        MR. BARTOS:  -- but I didn't know what

18    else to do to, you know --

19        THE COURT:  Stop violating it, how

20    about that?

21        MR. BARTOS:  No, but that's not why I

22    was violating it.

23        THE COURT:  Why were you violating it?

24        MR. BARTOS:  I was trying to save my

17

1          marriage, which was more important than . . .

2                    THE COURT:  Than going to jail.

3              MR. BARTOS:  Right.

4                    THE COURT:  Okay.

5                    MR. BARTOS:  My wife -- me and my wife

6          have an understanding as to March 11th, after the

7          last violation, that I would not contact her, that

8          she doesn't want me to go to jail, she wants me to

9          straighten out my life and wait for her to contact

10         me.  Okay?  She informed the mediator, whoever

11         that may be, of that, and when she told him that

12         she wouldn't be here today, I -- and from what I

13         understand, the mediator was pretty upset about

14         that, but I made sure that she was here today so

15         she could confirm everything I say --

16                   THE COURT:  Did she have a conversation

17         with you?

18                   MR. RYAN:  No, Your Honor.

19                   THE COURT:  Okay.

20                   MR. RYAN:  No, Your Honor.

21                   THE COURT:  I don't know who the

22         mediator is.  Is there a mediator in Salem

23         District Court?

24                   MR. BARTOS:  Well, whoever spoke --

18

1          THE CLERK:  No, no, ma'am.

2          THE COURT:  Okay.

3          MR. CARLTON:  Your Honor, the only -- I

4  did speak with the victim, I interviewed her.

5          THE COURT:  Okay.

6          MR. CARLTON:  I'm not a mediator, I'm a

7  probation officer.

8          THE COURT:  Right.

9          MR. CARLTON:  And she's quite clear as

10  to who I am.

11          THE COURT:  Okay.  And did she indicate

12  to you that they had an agreement that she didn't

13  want him to go to jail?

14          MR. CARLTON:  No, Your Honor.

15          THE COURT:  Okay.  Okay.  Anything else

16  you'd like to tell me?

17          MR. BARTOS:  I just seen my wife mouth

18  the words that, "I did tell him."

19          THE COURT:  Where is she?

20          MR. BARTOS:  Over there.

21          THE COURT:  Stand up, ma'am.  Did you

22  tell the probation officer that you didn't want

23  him to go to jail?

24          MS. BARTOS:  I told him I don't think

1    he'd benefit from jail.

2         THE COURT:  Okay.

3         MS. BARTOS:  I said I think he needs

4    psychiatric help, I think he needs a psychiatrist.

5    I said I don't think he needs jail, I don't think

6    it will help him.  I don't think it would help me

7    when he got out, either; I think if he got out, he

8    would still try to talk to me.

9         THE CLERK:  Judge, (inaudible) the

10   microphone so it's all picked up?

11        THE COURT:  Yeah.

12        MS. BARTOS:  (inaudible) psychiatrist,

13   a court order --

14        THE CLERK:  Excuse me, ma'am, could you

15   just go to the microphone?  I don't pick up back

16   there, and it has to be all on the record.

17        MS. BARTOS:  I told him, when I talked

18   to him, if he had, like, a court order to see a

19   psychiatrist, if he could, like, be free to choose

20   whoever he wanted to see, but a court order he had

21   to go, then I think that's what he needs.  I think

22   if he went to jail, I think he would just come

23   back and he'd try to talk to me again.  I think he

24   needs help, that's what I think he needs.

20

1        I don't think he'd benefit from jail.

2    I did tell him that when I talked to him on the

3    phone.  I don't think he'd benefit from jail.

4    He's never -- I will have to say, he did hurt my

5    family a lot and he did hurt me a lot and he did a

6    lot of awful things to me, and that's true.  I

7    don't think he deserves five years in jail.  He

8    did never physically hurt me.

9        I don't want any contact with him, I

10   don't want to see him again, but five years is a

11   little -- a little steep, I think.  I want him to

12   just leave me alone.  That's all I ever wanted.  I

13   don't want -- I'm not, you know, over here to put

14   him in jail forever, you know.  I just want him to

15   leave me alone.  I think he needs professional

16   help.  That's what I said from the beginning,

17   that's what I think he needs, really.

18                THE COURT:  Okay, thank you.

19                MR. CARLTON:  Excuse me --

20                MR. BARTOS:  Your Honor --

21                MR. CARLTON:  (inaudible) whether they

22   had an agreement.

23                THE COURT:  Okay.

24                MR. CARLTON:  (inaudible) Mr. Bartos

21

1    had not contacted her, but this is what she asked

2    for.

3                 THE COURT:  Have we already had this

4    guy evaluated?

5                 MR. CARLTON:  Yes -- oh, evaluated, I'm

6    not sure.

7                 THE COURT:  Okay.

8                 MR. BARTOS:  Can I proceed?

9                 THE COURT:  Yes.

10                 MR. BARTOS:  The other concern I have

11    is that when I entered my guilty plea, my mother

12    brought this to my attention, Judge Griffin told

13    the Probation no probation, so I don't even

14    understand how I got on probation to violate

15    probation.

16                 THE COURT:  You can -- the case is

17    continued with no finding until 3/9/200, which

18    means that when you signed that little contract,

19    one of the terms was that you don't get arrested

20    again.  So you're in violation because you were

21    arrested again for a violation.

22                 MR. BARTOS:  Okay.

23                 THE COURT:  Okay?  So that's kind of

24    how it happens.

1        MR. BARTOS:  Right, but I mean --

2        THE COURT:  All right?

3        MR. BARTOS:  -- Judge Griffin did say

4   on the record that no probation.

5        THE COURT:  Well, that means that you

6   don't have to report to the probation officer

7   every week, but there is a term, through the year

8   2000, that you are to remain not arrested, in no

9   violation of any laws or etcetera, etcetera.  And

10  then what happens is, two days after you receive

11  this sentence, you're in violation, so that's why

12  you're here.

13       MR. BARTOS:  Right.

14       THE COURT:  And that's why they're

15  going forward.  And part of the continuation

16  without a finding was that you were not to commit

17  any new crimes, and based on the fact that they're

18  alleging that you did commit the crimes and your

19  wife is testifying that you contacted her in

20  violation of the restraining order, then that's a

21  violation of the continuance without a finding, at

22  which point they can request that that be vacated

23  and that you receive a guilty two and a half years

24  in the house of correction.

23

1          MR. BARTOS:  Okay.

2          THE COURT:  Okay?  So probation, the

3     term probation means that you didn't have to

4     report here weekly to a probation officer.

5          MR. BARTOS:  Right.

6          THE COURT:  Okay.  But it still means

7     that the term is open and the court has

8     jurisdiction over you.

9          MR. BARTOS:  Okay, now I understand.

10          THE COURT:  Okay.  Anything else you'd

11     like to say?

12          MR. BARTOS:  Yeah.  I did hurt my wife

13     a lot emotionally and more so than I hurt myself,

14     and I think I basically, you know -- I mean, I got

15     the help I need, I know that what I need to do,

16     what I need to do is the right thing now.

17          THE COURT:  Which is what?

18          MR. BARTOS:  Which is basically what I

19     know is right.

20          THE COURT:  Which is what?

21          MR. BARTOS:  It could be any number of

22     things.

23          THE COURT:  Okay.  You tell me what you

24     think is right.  You understand this woman wants

24

1  to have no contact with you?

2  MR. BARTOS: Yeah, I do.

3  THE COURT: And there is no saving the

4  marriage?

5  MR. BARTOS: Right.

6  THE COURT: And there's no way that you

7  could remedy this situation?

8  MR. BARTOS: Right.

9  THE COURT: Okay. You also understand

10 that she has requested that you get some kind of

11 counseling --

12 MR. BARTOS: Right.

13 THE COURT: -- to handle and resolve

14 the situation?

15 MR. BARTOS: Right.

16 THE COURT: Okay. And do you think

17 that's the right thing to do?

18 MR. BARTOS: Yes.

19 THE COURT: Okay.

20 MR. BARTOS: I'll do whatever makes my

21 wife happy.

22 THE COURT: No.

23 MR. BARTOS: Well, as now, she's my

24 wife. Maybe after she gets a divorce, whatever,

1        you know . . .

2                THE COURT:  And do you understand about

3        the order?

4                MR. BARTOS:  Yes, I do.

5                THE COURT:  Okay.  And you understand

6        there's to be no contact.

7                MR. BARTOS:  Yes.

8                THE COURT:  And you understand that you

9        can't see her anymore.

10               MR. BARTOS:  Right.

11               THE COURT:  And that you can't go to

12       her work and you can't call her.

13               MR. BARTOS:  Right.

14               THE COURT:  You can't speak to any of

15       her friends or her family about her.

16               MR. BARTOS:  Right.  I understand --

17               THE COURT:  You understand all that?

18               MR. BARTOS:  I understand fully.

19               THE COURT:  Okay.  And if I ordered you

20       into treatment, would you go?

21               MR. BARTOS:  What kind of treatment?  I

22       don't understand what kind of treatment I need.

23               THE COURT:  Psychiatric treatment.

24               MR. BARTOS:  If you ordered it, I

1    would, but I don't see the need for it.  I mean,

2    I'm a full-time student at Salem State, I have my

3    own apartment, a dog to take care of, a roommate

4    to split the rent with.

5                    THE COURT:  Okay.

6                    MR. BARTOS:  I mean, I have a lot going

7    for me.  Right now I'm temporarily employed by

8    Long's Corporate Gifts --

9                    THE COURT:  Okay.

10                   MR. BARTOS:  -- shipping and receiving.

11   They want to hire me full-time when they move to

12   Burlington as of May 1st.

13                   THE COURT:  Okay.

14                   MR. BARTOS:  So I mean, I want to build

15   my life up --

16                   THE COURT:  Right.

17                   MR. BARTOS:  -- rather than, you know,

18   tear somebody else down.  I mean, I realize that a

19   lot of the things I did in the past are crooked,

20   and basically I want to just --

21                   THE COURT:  Fix it.

22                   MR. BARTOS:  Not so much fix it, just

23   go straight.

24                   THE COURT:  Okay.  Anything else?

1             MR. BARTOS:  I don't believe so, other

2    than, you know, I apologize to my wife for all the

3    hardship I've caused her and for taking up the

4    court's time with this.

5             THE COURT:  Okay.

6             MR. BARTOS:  But I do think I've got

7    the help that I need, I understand what I need to

8    do.

9             THE COURT:  And is Probation making any

10   recommendations?  Is that -- is that all you'd

11   like to say?

12            MR. BARTOS:  Yeah.

13            THE COURT:  Okay.

14            MR. RYAN:  Our recommendation, Your

15   Honor, he's not appropriate for probation, given

16   that he's (inaudible) that he knows the difference

17   between right and wrong.  He's had the order, he's

18   had the probation situation in front of him, and

19   he just blatantly -- he's been on probation since

20   he was a juvenile (inaudible) done what he wanted

21   (inaudible) shows he's inappropriate for

22   probation.

23            THE COURT:  Okay.

24            MR. BARTOS:  Your Honor?

SCANNED

28

1          THE COURT:   Yup?

2          MR. BARTOS:   I'm not the same person

3    that I was before.   You know, I haven't been on

4    probation, since my release last year, I haven't

5    had any new arrests whatsoever, unless they were

6    related to my wife.   I've maintained my own place

7    since April, and --

8          THE COURT:   What about the Lynn

9    matters?

10         MR. BARTOS:   The Lynn matters are all

11   related to my mother-in-law.   All related to my

12   mother-in-law.   In fact, my wife (inaudible) I

13   hadn't been charged with the B&E in the nighttime

14   with intent to commit a felony, my wife told me we

15   wouldn't have gotten -- we wouldn't have gotten

16   married, so I mean, there's -- there is a lot of

17   confusion there that needs to be worked out.

18         THE COURT:   Okay.   Do you want to try

19   to resolve the pre-trial while we're here, or do

20   you want to put that matter over?   Is he being

21   held on bail on the pre-trial?

22         MR. RYAN:   Yes, he is, Your Honor,

23   $500.

24         A.D.A.:   I believe so.

29

1          THE COURT:  Pardon me?

2          THE CLERK:  Yeah, he's on $500 cash and

3   without bail on the probation matter.

4          THE COURT:  Okay.

5          A.D.A.:  Your Honor, the Commonwealth

6   would also be recommending committed time for Mr.

7   Bartos, so perhaps it would be a situation that

8   might benefit from a further date.

9          THE COURT:  Okay.

10          MR. BARTOS:  I'd just as soon resolve

11   it today.  That way I don't have to wait for

12   anything.

13          THE COURT:  Okay.

14          MR. BARTOS:  I can just get on with my

15   life and put this behind me.

16          THE COURT:  Okay.  You understand that

17   they'd be looking for you to admit that you

18   violated the probation -- I mean, excuse me,

19   violated the restraining order?

20          MR. BARTOS:  Right.

21          THE COURT:  Okay.

22          MR. BARTOS:  I realize that.  I

23   just . . .

24          THE COURT:  Okay.  And we need you to

1  fill out a green sheet.  Could you explain to him

2  about the green sheet?

3  MR. WARMSLEY:  Yes.

4  THE COURT:  Okay.  And Mr. Warmsley,

5  just make a recommendation regarding sentencing

6  for -- and the Commonwealth will make their

7  recommendation, which is going to be committed

8  time.

9  MR. WARMSLEY:  I will, yes.

10  THE COURT:  Okay?

11  MR. WARMSLEY:  Thank you, Your Honor.

12  (Brief pause.)

13  MR. WARMSLEY:  He should also be

14  signing a waiver of counsel, I believe, correct?

15  MR. BARTOS:  I already did.

16  THE COURT:  He already did, I

17  understand.  Is that correct?

18  MR. WARMSLEY:  On these new charges?

19  MR. BARTOS:  I did it.

20  THE COURT:  I think the clerk told me

21  that he did.

22  THE CLERK:  I do have a waiver of

23  counsel, Your Honor, on this.

24  THE COURT:  Okay.

31

1          THE CLERK:  And I have (inaudible).

2     Yes, Your Honor.

3          THE COURT:  Okay.

4               (Brief pause.)

5          THE COURT:  Do you want to call the

6     other guy?

7          THE CLERK:  Excuse me, Your Honor?

8          THE COURT:  Do you want to call the

9     other guy and see if we can just send him to

10    Bridgewater?

11         THE CLERK:  Oh, yeah, sure.  Okay.  Mr.

12    Warmsley, we'll give you a few minutes for that.

13               (The Court addresses an

14                unrelated matter.)

15         THE CLERK:  Mr. Bartos?

16               (Off the record.)

17         A.D.A.:  -- Officer Coajeck (phonetic)

18    would testify that he was dispatched to Andover

19    (inaudible) restraining order violation.  When he

20    arrived, he approached the victim, a Catherine

21    Squires, who indicated that the defendant had

22    called her on the telephone approximately fifteen

23    times, in violation of the no-contact provision of

24    the restraining order.  She indicated that she had

32

1  recorded the calls.

2  There was no phone number that was

3  displayed showing where it was coming from.

4  However, on three different calls, Chad had left a

5  message.  The officer did listen to those messages

6  at the time, recognized his voice from a previous

7  arrest that he had made the day before.  And in

8  all three calls, it indicates in the report that

9  the defendant had left basically the same message,

10  that he wanted to get back together with

11  Catherine, he couldn't go on living without her,

12  he wanted to speak with her.

13  All the calls that had come in that

14  were on the machine totaled thirty, at which point

15  the officer did call the defendant at home.  He

16  answered.  After a brief conversation during which

17  he was informed that he had again violated the

18  restraining order and had to be charged, he didn't

19  say -- and that he was not supposed to call

20  anymore, he didn't say much in return.  Those are

21  essentially the facts.

22  THE COURT:  Okay.  Mr. Bartos, I know

23  that you've only had a brief opportunity, but you

24  wanted to resolve this case today.  These rights

1    that are on the back of this green sheet, you've

2    read these rights, correct?

3              MR. BARTOS:  Yes.

4              THE COURT:  Okay.  Now I'm going to ask

5    you a series of questions, and I don't have to

6    accept your recommendation, I don't have to accept

7    the Commonwealth's recommendation, and I could

8    devise my own recommendation, and if you don't

9    like that, you can withdraw your plea on the two

10   new cases and schedule the matter over for another

11   day.  Okay?

12             MR. BARTOS:  (No verbal response)

13             THE COURT:  But on the violation of

14   probation, there's no appeal from that.  Okay?

15   You can't withdraw your -- the disposition on

16   that.

17             MR. BARTOS:  Okay.

18             THE COURT:  Okay?  All right.  State

19   your name and age for the record, please.

20             MR. BARTOS:  Chad Nathan Bartos, age

21   22.

22             THE COURT:  Okay.  Have you had any

23   drugs or alcohol in the last twenty-four hours?

24             MR. BARTOS:  No, I have not.

34

1          THE COURT:  Have you ever been treated

2     for a mental illness that would cause you to be

3     confused about what was happening here today?

4          MR. BARTOS:  No.

5          THE COURT:  Okay.  Do you understand,

6     sir, by admitting to the three charges of

7     violation of a restraining order, that you're

8     waiving your right to have a trial by a judge or a

9     jury forever on those matters?

10         MR. BARTOS:  Yes.

11         THE COURT:  Do you understand, sir,

12    that you're waiving your -- if you chose a jury

13    trial, you and your attorney or you yourself could

14    participate in the selection of the jurors and

15    that they would have to find you guilty

16    unanimously?

17         MR. BARTOS:  Yes.

18         THE COURT:  Do you understand, sir,

19    that you're waiving your right to confront

20    witnesses and present evidence on your own behalf?

21         MR. BARTOS:  Yes.

22         THE COURT:  Do you understand, sir,

23    that you're waiving your right requiring the

24    government to prove each and every element of

CIV COURT REPORTERS, LTD

1    these crimes beyond a reasonable doubt?

2             MR. BARTOS:  Yes.

3             THE COURT:  Do you understand, sir,

4    you're waiving your right to remain silent,

5    because you're admitting to these charges today?

6             MR. BARTOS:  Yes.

7             THE COURT:  You've heard the facts of

8    the Commonwealth which had to do with the phone

9    calls, and you're admitting that you made those

10   phone calls?

11            MR. BARTOS:  Yes.

12            THE COURT:  And you violated the

13   restraining order?

14            MR. BARTOS:  Yes.

15            THE COURT:  Okay.  Has anyone forced

16   you to make this admission today, sir?

17            MR. BARTOS:  No.

18            THE COURT:  You're doing so freely,

19   willingly and voluntarily?

20            MR. BARTOS  Yes.

21            THE COURT:  Okay.  Commonwealth, I'll

22   hear you on disposition.

23            A.D.A.:  Your Honor, the Commonwealth

24   is recommending straight committed time for Mr.

1    Bartos based on the fact that, as you've heard

2    today from the Probation Department and the

3    information that we have as well from the

4    Probation Department, Mr. Bartos is not a

5    candidate for probation.

6         In addition, his history of this type

7    of behavior, evidenced most currently by the most

8    recent two arrests, indicate complete disregard

9    for the rules of the court and specifically the

10   restraining order.  He's not appropriate for

11   probation.

12        He has a history on his record of cases

13   of an assaultive nature, one of which I would

14   point Your Honor's attention to is a superior

15   court case which was partially nol prossed, from

16   my indication of the record --

17             THE COURT:  Right.

18             A.D.A.:  -- and that he did eventually

19   serve time on.  In addition, he has an extensive

20   juvenile record.  He was committed several times

21   to D.Y.S. as a juvenile --

22             MR. BARTOS:  Objection.

23             A.D.A.:  -- and he also was committed

24   on --

1              THE COURT:  That's okay.

2              A.D.A.:  -- cases that were an

3      assaultive nature.  Now, understandably,

4      psychiatric care or counseling might be

5      appropriate, but in this situation, the victim's

6      safety is of utmost concern, and for those

7      reasons, the Commonwealth is recommending

8      committed time.

9              THE COURT:  Okay.  And does -- Mrs.

10     Bartos, do you wish to say anything, since you are

11     the victim in this case?

12             MS. BARTOS:  Yes.

13             THE COURT:  You can please come down to

14     the microphone.

15             MS. BARTOS:  Yeah.  I just want to say,

16     I've probably said it before, he never physically

17     hurt me.

18             THE COURT:  Right.

19             MS. BARTOS:  I mean, all these calls

20     and everything, I know, like I said before, he did

21     bother my family, he did all these things.  But I

22     mean, if he's going to leave me alone, then I

23     believe he's going to leave me alone.  I mean, I

24     want to -- I have the restraining order now.

38

1    THE COURT: Right.

2    MS. BARTOS: So I mean, I'd be

3    agreeable, if I could keep the restraining order

4    for my mother's sake, you know, just to keep

5    everybody -- because I live with her.

6    THE COURT: Right.

7    MS. BARTOS: So if I could keep that to

8    ease her, you know, and ease myself, what if I am

9    wrong, but, you know, I'd be agreeable to just,

10    you know, maybe give him some counseling,

11    necessarily take him to jail -- you know what I

12    mean? Because like I said, I don't -- he doesn't

13    have a record for physically hurting anybody.

14    THE COURT: Right.

15    MS. BARTOS: He doesn't have a record

16    for ever physically hurting anyone, and he's never

17    tried to physically hurt me. So, you know, I

18    don't want him to go to jail, I just -- I called

19    the police because I didn't know what else to do.

20    THE COURT: Okay.

21    MS. BARTOS: I wanted him to leave me

22    alone and it wasn't getting through to him, so I

23    had no other choice.

24    THE COURT: Okay.

1    MS. BARTOS:  I didn't want it to come

2    to this, but I just wanted, for my mother's sake,

3    because, you know, I just want to ease her fears,

4    if I can keep the restraining order, I think this

5    time I think he'll leave me alone.  If I have an

6    order, that's my safety guard.  You know what I

7    mean?  So, you know, that's all I have to say.

8         THE COURT:  Okay, thank you.

9         A.D.A.:  Your Honor, just briefly, if I

10   may.

11        THE COURT:  Yup.

12        A.D.A.:  The fact that he has no

13   assaults or he hasn't . . .

14        THE COURT:  Right.

15        A.D.A.:  -- any physical violence,

16   that's what the Commonwealth is trying to prevent

17   from happening, and obviously the Commonwealth's

18   argument would be, in terms of the restraining

19   order, that that piece of paper has not been

20   sufficient to stop this defendant in the past, and

21   it certainly is not protection, when you're

22   holding it out in front of you, from anything that

23   might possibly happen, and that's the

24   Commonwealth's concern in this instance.

40

1                      THE COURT:  Okay.

2                      MR. BARTOS:  Your Honor?

3                      THE COURT:  One second.  I'll give you

4  your shot.  Probation, what are you looking for on

5  the V.O.P.?

6                      MR. RYAN:  Your Honor, Probation is

7  looking for seeing Mr. Bartos as his -- the

8  preponderance has been met and he's been found in

9  violation.

10                     THE COURT:  Um-hum.

11                    MR. RYAN:  Therefore, Probation would

12  be asking two, two years.

13                    THE COURT:  Committed?

14                    MR. RYAN:  Yes.

15                    THE COURT:  Okay.  Mr. Bartos?

16                    MR. BARTOS:  For one, I was never

17  committed by the -- to the Department of Youth

18  Services, any --

19                    THE COURT:  That's all right, I'm not

20  taking any other juvenile into -- into --

21                    MR. BARTOS:  Okay.  I just wanted it to

22  be corrected on the record.

23                    THE COURT:  That's okay.

24                    MR. BARTOS:  And the other thing was

41

1   that, like I said before, when my wife went in to

2   get the restraining order, she told the judge she

3   wasn't in fear of me.

4                    THE COURT:  Right.

5                    MR. BARTOS:  And there was no grounds

6   to get it, but because -- for whatever reason, it

7   was issued.

8                    THE COURT:  Right.

9                    MR. BARTOS:  And that if I was to

10  appeal it and have it rescinded and not bother --

11  not bother with my wife any more and just -- then

12  the charges could potentially be dropped.

13                   THE COURT:  Okay.

14                   MR. BARTOS:  Because as she said, I --

15  she's not in any fear of me.  That's what the

16  restraining order protects, abuse.  I've not

17  abused her.  My record doesn't indicate --

18                   THE COURT:  Well, thirty phone calls is

19  abuse.

20                   MR. BARTOS:  Well, yeah, well --

21                   THE COURT:  If you know what I mean.

22  Okay?

23                   MR. BARTOS:  Yeah, but there's other

24  provisions for that than a restraining order.

42

1            THE COURT:  There's also a jail

2   sentence for that.

3            MR. BARTOS:  Right, annoying phone

4   calls.

5            THE COURT:  Right, okay.

6            MR. BARTOS:  I realize that, but I'm --

7   what I'm trying to do is try to be reasonable

8   here.

9            THE COURT:  Okay.

10            MR. BARTOS:  To, you know --

11            THE COURT:  And I'm trying to make it

12   clear so that you will really understand that

13   regardless of whether you thought the order was

14   right or wrong --

15            MR. BARTOS:  Right.

16            THE COURT:  -- whether you appealed it

17   or didn't appeal it, it was still an order.

18            MR. BARTOS:  Right.

19            THE COURT:  And you were still

20   obligated to comply with the order.  Right?

21            MR. BARTOS:  That's correct, and that's

22   why I'm here today --

23            THE COURT:  Okay.  And now it's still

24   going to be in effect.

43

1          MR. BARTOS:  Right.  That's why I'm

2    here today --

3          THE COURT:  Do you understand that?

4          MR. BARTOS:  -- is because I did what I

5    wanted to do instead of what was right.

6          THE COURT:  Exactly.

7          MR. BARTOS:  Right.

8          THE COURT:  So you understand, okay,

9    that the order is still in effect until 2000?

10          MR. BARTOS:  Exactly, yeah.

11          THE COURT:  Okay.  And you understand

12    that you cannot violate it.

13          MR. BARTOS:  I understand everything

14    completely.

15          THE COURT:  Okay.  Do you understand,

16    really?

17          MR. BARTOS:  Yes, I -- I --

18          THE COURT:  Okay.

19          MR. BARTOS:  I mean, I just did -- the

20    problem here is, I did what I wanted.

21          THE COURT:  Right.

22          MR. BARTOS:  Without any regards to

23    what was right or wrong.

24          THE COURT:  Right.  Okay.  I'm not

44

1   going to take your recommendation, which is seven

2   days committed.  And I'm not going to take the

3   Commonwealth's recommendation, which is two years

4   house of correction.  And I'm not going to take

5   the Probation's, which is two years house of

6   correction.

7              I'm going to give you thirty days

8   committed -- actually, I'm going to give you nine

9   months house of correction, thirty days to serve,

10  balance suspended on Count 1.  Count 2, I'm going

11  to give you guilty, one year probation, concurrent

12  with the first.  And count 2 (sic), I'm going to

13  give you guilty, one year probation, concurrent

14  with the first.  On the violation of probation,

15  I'm going to give you thirty days committed

16  straight and terminate the probation.

17             Now, as terms of the conditions of your

18  probation -- and this Probation Department doesn't

19  want you on probation.

20             MR. BARTOS:  Yes.

21             THE COURT:  Okay?  You may transfer the

22  probation down to the Lynn District Court, where

23  you'll be monitored.  I want you evaluated by the

24  court clinic, which means you're going to go and

1    talk to somebody.

2              MR. BARTOS:  Right.

3              THE COURT:  And depending on what they

4    recommendate -- what their recommendation is for

5    counseling, you are to go into and complete any

6    counseling that they suggest.

7              If you don't go because you don't like

8    it or because it's an order that you don't want to

9    follow or for whatever reason you believe that

10   it's not the right thing to do, that will be a

11   violation of your probation and you will go back

12   and either do the eight months on the first

13   sentence or two and a half or two years on the

14   second two sentences.  Is that understood?

15             MR. BARTOS:  Perfectly.

16             THE COURT:  Okay.  You can transfer his

17   probation as soon as the matters in Lynn are

18   complete down there, if you don't want to keep him

19   here.

20             MR. RYAN:  Yes, Your Honor.

21             THE COURT:  Okay?

22             MR. RYAN:  Thank you, Your Honor.

23             MR. BARTOS:  Your Honor, one other

24   concern.

46

1    THE COURT: Okay, let me just -- yes,

2    go ahead.

3    MR. BARTOS: My wife bailed me out the

4    $750 on that B&E charge and violations in Lynn.

5    THE COURT: Yup.

6    MR. BARTOS: And I'm afraid that her

7    money will be revoked because of these new

8    arrests.

9    THE COURT: It won't be.

10    MR. BARTOS: Okay.

11    THE COURT: Okay? Let me -- when are

12    you due back there? Have you got a lawyer?

13    MR. BARTOS: April 2nd. No, I

14    represent myself.

15    THE COURT: Okay. Well, he's done

16    seven days. Will he be out by the 2nd? No.

17    THE CLERK: Excuse me, Your Honor?

18    THE COURT: If he's done seven days and

19    I gave him thirty, he won't be out by the 2nd,

20    right?

21    THE CLERK: No, no, ma'am.

22    THE COURT: Okay. Can we get a -- how

23    do we -- can we set a mitt. for him for them to

24    send him to Lynn on the 5th?

1              THE CLERK:  What's going on on the 5th

2       in Lynn?

3              MR. BARTOS:  On the 2nd.

4              THE CLERK:  What's going on over there?

5              THE COURT:  He has a case in Lynn on

6       April 5th.

7              THE CLERK:  Judge, they'd have to habe.

8       him out of Lynn.

9              MR. BARTOS:  But the date was changed.

10      I did a motion to discharge counsel and they

11      changed the date to April 2nd.  Attorney

12      Alexander --

13              THE CLERK:  They'd have to habe. him --

14      Attorney Warmsley could do that, or whoever's

15      representing him, through Lynn.

16              MR. BARTOS:  I don't -- I represent

17      myself.

18              THE COURT:  He doesn't have -- that's

19      the other problem, he doesn't have a lawyer in

20      Lynn.

21              THE CLERK:  Do you have a probation

22      officer?

23              THE COURT:  No.

24              MR. BARTOS:  No, I'm not on probation.

48

1          THE CLERK:  We don't have him here, and

2     I don't know how to -- what avenue to get him

3     there from our court.  We can't issue a mittimus

4     from here to get him to Lynn.  /.

5          THE COURT:  Okay.

6          THE CLERK:  You'd have to petition

7     Lynn, write them and ask them to habe. you in for

8     that date, if you don't have --

9          THE COURT:  Yeah, well, only because I

10    don't want the wife to lose her money.  She put

11    the bail on him.

12          THE CLERK:  If he's in custody, she

13    wouldn't lose the money.

14          THE COURT:  Yeah, you know, if

15    somebody's paying attention.

16          THE CLERK:  Yes, Your Honor.

17          THE COURT:  Right?

18          THE CLERK:  It's not like Salem

19    District Court, the magistrate up here --

20          MR. BARTOS:  Well, she could lose the

21    money because I got arrested?

22          THE COURT:  No.

23          MR. BARTOS:  Okay.

24          THE COURT:  Okay?  We won't let that

49

1    happen.  So let me do this.  Guilty.

2             MR. BARTOS:  I could contact Attorney

3    Alexander, who's on standby, to ensure that I'm --

4             THE COURT:  Good idea.  And have -- is

5    it a her?

6             MR. BARTOS:  Him.

7             THE COURT:  Him habe. you in to Lynn.

8             MR. BARTOS:  Okay.

9             THE COURT:  He can have it sent from

10   Lynn Court up to the jail.

11            MR. BARTOS:  Okay.

12            THE COURT:  Okay?

13            THE CLERK:  I'm just waiting for the

14   green slip.  Mr. --

15            THE COURT:  Yeah, I'm writing it quick.

16            THE CLERK:  Yes, Your Honor,

17   (inaudible) probation officer.

18            THE COURT:  Because I need the

19   defendant to --

20            THE CLERK:  Sign.

21            THE COURT:  -- sign that he is

22   accepting my change in sentencing.  Would you just

23   explain to him what the bottom says there with my

24   scribble, which is the sentence I gave him?

GRM COURT REPORTERS, LTD.

50

1        MR. WARMSLEY:  Could you insert the

2    seven days' credit for time served, Judge?

3        THE COURT:  Sure.  I usually put that

4    on (inaudible).  Seven days' credit.  Okay.  Did

5    you get it?

6        THE CLERK:  I'm waiting for the green

7    slip, Your Honor.

8        THE COURT:  Nine months house of

9    correction -- count 1, nine months house of

10   correction suspended, thirty days to serve,

11   balance suspended, one year probation.

12       THE CLERK:  How long -- nine months in

13   the house of correction, suspended one year with

14   probation.

15       THE COURT:  Court clinic evaluation and

16   any treatment as deemed necessary by Probation.

17       THE CLERK:  Thank you.

18       THE COURT:  Counts 1 and 2 are guilty,

19   one year probation concurrent with the above.  The

20   V.O.P. is a straight guilty --

21       THE CLERK:  Thirty days in the house.

22       THE COURT:  -- thirty days house of

23   correction and terminate.

24       MR. WARMSLEY:  Judge, could you make

1    clear as far as Counts 2 and 3 --

2            THE COURT:  Yes.

3            MR. WARMSLEY:  -- that they are

4    concurrent with Count 1?

5            THE COURT:  Yup.

6            THE CLERK:  Judge, actually, the

7    revocation of the continuance without a finding --

8            THE COURT:  Yup.

9            THE CLERK:  -- you're invoking a

10   guilty --

11           THE COURT:  Guilty, thirty days --

12           THE CLERK:  -- thirty days in the

13   house, period.  There would be no termination of

14   probation.  He's not on probation.

15           THE COURT:  Okay.

16           THE CLERK:  So --

17           THE COURT:  Well, the case is

18   terminated, however you --

19           THE CLERK:  Thank you, thank you, Your

20   Honor.

21           THE COURT:  After service, he serves --

22           THE CLERK:  So it's probation -- after

23   hearing, probation --

24           THE COURT:  So you're accepting my

52

1        recommendation.  Miss Bartos, do you understand

2        what I did?

3                    MS. BARTOS:  Yes.

4                    THE CLERK:  Just for the record, 685,

5        the probation matter, after hearing, probation is

6        revoked, guilty finding and thirty days in the

7        house of correct committed, seven days' credit for

8        time served.

9                    THE COURT:  Yes.

10                   THE CLERK:  Thank you, Mr. Warmsley.

11       Okay.  And on criminal docket 0758, count A,

12       guilty, nine months in the house of correction,

13       thirty days served, balance suspended one year

14       with probation, seven days' credit for time

15       served.  Court clinic evaluation and any treatment

16       that's required.  Count 2 is guilty, one year

17       probation.  Count 3, guilty, one year probation.

18       2 and 3 will run concurrent with Count A, and

19       we'll make sure the mittimus reflects credit for

20       time served.  That's it, Judge.  No victim

21       witness, Your Honor?

22                   THE COURT:  No victim witness.

23                   THE CLERK:  Okay.  And no attorney's

24       fee?

53

1                    THE COURT:  And no attorney's fee, and

2        the probation fee will be waived while and if he's

3        in treatment.

4                    THE CLERK:  Yes, Your Honor.

5                    THE COURT:  Okay?

6                    THE CLERK:  Thank you.  Your Honor,

7        that would complete the call of the list.

8                    THE COURT:  Really?

9                    THE CLERK:  Yes, ma'am.

10                        (Whereupon the proceedings

11                         were concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

54

## C E R T I F I C A T E

This is to certify the foregoing is a true and accurate record, to the best of my skill and ability, of the proceedings in the matter of the Commonwealth of Massachusetts, Plaintiff, vs. Chad Bartos, Defendant, Docket No. CR0758, heard on March 19, 1999 at Salem District Court, serial no. 116012, tape #59 (747-848, 884-886); tape #60 (0-133).

Lisa M. Cimmino
Notary Public

12-8-99
Date

LISA M. CIMMINO
Notary Public
Commonwealth of Massachusetts
My Commission Expires
January 28, 2005